# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF TEXAS

# AUSTIN DIVISION

| | | |
|---|---|---|
| JOHNNY ANTHONY MORENO, § | | |
| Petitioner, § | | |
| § | | |
| V. § | A-09-CA-422-LY | |
| § | | |
| RICK THALER, Director, § | | |
| Texas Dept. of § | | |
| Criminal Justice-Correctional § | | |
| Institutions Division,[1] § | | |
| Respondent. § | | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

To:     The Honorable Lee Yeakel, United States District Judge

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Petitioner's brief in support thereof (Document 2); Respondent's Answer (Document 18); and Petitioner's response thereto (Document 21). Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

---

[1] The previous named respondent in this action was Nathaniel Quarterman. On July 15, 2009, Rick Thaler succeeded Quarterman as Director of the Texas Department of Criminal Justice, Correctional Institutions Division. Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, Thaler is automatically substituted as a party.

## STATEMENT OF THE CASE

A.  **Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 368th Judicial District Court of Williamson County, Texas, in cause number 07-712-K368. Petitioner was charged with the felony offenses of aggravated robbery and burglary of a habitation. On January 23, 2008, he pleaded guilty to the charges and true to two prior convictions alleged for enhancement of punishment. The trial court found the enhancement allegations to be true and assessed punishment of 25 year imprisonment for each offense.

Petitioner attempted to appeal his conviction. However, his appeal was dismissed because he waived his right to appeal pursuant to his plea bargain agreement. Petitioner also challenged his conviction in a state application for habeas corpus relief. On March 4, 2009, the Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court. Ex parte Moreno, Appl. No. 71,478-01.

B.  **Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1.  Petitioner was denied due process in his state habeas review (ground 1);
2.  The State used unlawfully seized evidence (grounds 2 and 3);
3.  Trial counsel was ineffective (ground 4); and
4.  Petitioner's conviction violates the Constitution (ground 5).

C.  **Exhaustion of State Court Remedies**

Respondent contends that Petitioner has only exhausted his state court remedies regarding his claim of ineffective assistance of counsel. As a result, Respondent argues Petitioner's remaining claims are procedurally barred.

## DISCUSSION AND ANALYSIS

A.  **Infirmities in State Habeas Proceedings**

To the extent Petitioner complains in ground one that the Texas Court of Criminal Appeals or the state trial court misapplied their own standard of law during state habeas review, his claim fails. Infirmities in state habeas corpus proceedings do not constitute grounds for federal habeas corpus relief. Wheat v. Johnson, 238 F.3d 357, 361 (5th Cir. 2001); Vail v. Procunier, 747 F.2d 277 (5th Cir. 1984).

B.  **Unexhausted Claims**

The only claims raised by Petitioner in his state application for habeas corpus relief were for ineffective assistance of counsel. Thus, Petitioner has not exhausted his claims as alleged in grounds 2, 3 and 5 of his application. Petitioner's unexhausted claims are procedurally barred. A subsequent state application for habeas corpus on Petitioner's unexhausted issues would be futile as it would be dismissed pursuant to TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 as an abuse of the writ. When a state court decision rests on a state law ground that is independent of a federal question and adequate to support the judgment, federal courts lack jurisdiction to review the merits of the case. Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991). In order for a claim of procedural default to preclude federal review of a habeas petitioner's claim, the last state court issuing a reasoned decision must have clearly and unequivocally relied upon the procedural default

3

as an independent and adequate ground for denying relief. Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038, 1043 (1989). Additionally, even though a claim has not been reviewed by the state courts, this Court may find that claim to be procedurally barred. Coleman, 501 U.S. at 735, 111 S. Ct. at 2557. The general rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. Id. at n.1. However, a petitioner can still obtain federal habeas review on a claim denied by the state court on the grounds of procedural default if he can show cause and actual prejudice for his procedural default or that a failure to address the merits of the federal claim would result in a miscarriage of justice. Moore v. Roberts, 83 F.3d 699, 702 (5th Cir. 1996), citing Coleman, 501 U.S. at 750, 111 S. Ct. 2565, cert. denied, 519 U.S. 1093, 117 S. Ct. 773 (1997).

Petitioner has failed to show cause and actual prejudice for his procedural default and has made no showing that a failure to address the merits of the federal claims would result in a miscarriage of justice. Therefore, Petitioner is barred from raising his unexhausted claims.

**C.  Standard of Review**

The AEDPA radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254. Under the AEDPA's standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

4

of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)). The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court. See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts. See 28 U.S.C. § 2254(e)(1). While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence. See id. Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings. See id. § 2254(d)(2).

In his only exhausted ground for relief, Petitioner argues that he received ineffective assistance of counsel, because counsel failed to adequately investigate and challenge the lawfulness of Petitioner's arrest. Specifically, Petitioner alleges that his arrest was pursuant to an invalid warrant and was pre-textual.

5

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. Id. at 686-689, 104 S. Ct. 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S. Ct. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97, 104 S. Ct. at 2069. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 687, 104 S. Ct. at 2064.

Trial counsel provided his affidavit on state habeas review. Ex parte Moreno, Appl. No. 71,478-01 at 95-99. Counsel attested:

> The police report stated that the police arrested Mr. Moreno on an [sic] Bastrop [C]ounty warrant at the office of his parole officer. The report stated that the police took Mr. Moreno's fingerprints subsequent to his arrest. The report stated that, upon learning that the warrant had been recalled, police advised Mr. Moreno that he was no longer under arrest on the warrant. The report stated that police informed Mr. Moreno that his fingerprints had been found at the crime scene, and he was under arrest for the aggravated robbery of Ms. Fritz. The report stated that police read Mr. Moreno his Miranda warnings. The report stated, that after being mirandized, Mr. Moreno confessed to police to entering Ms. Fritz's truck and trying, but failing, to start it, entering Ms. Fritz's home by breaking the door hinge, telling her to give him all her money, and then receiving money from her which she had taken out of her purse.
>
> I do not recall the specifics of any conversation I had with Mr. Moreno concerning the issue of the legality of his arrest or detention leading to his confession. I do not recall the specifics of any conversation I had with Mr. Moreno concerning the issue of the voluntariness of his confession. I do not remember Mr. Moreno ever telling me that he [sic] his mental processes were negatively impaired by cocaine at the time he gave his confession.
>
> I did, however, file a motion to suppress the confession. In the motion to suppress, it alleged that the confession was involuntary and was the product of an illegal detention and/or illegal arrest. That motion was never heard by the trial court because, before it could be heard, Mr. Moreno pleaded guilty and waived the suppression issue. Prior to his guilty plea, I discussed with Mr. Moreno the strength of the State's case apart from the confession, namely the presence of his DNA and fingerprints at the crime scene. I explained to Mr. Moreno that, if he went to trial, he would likely be convicted based on that evidence.
>
> My investigation in this case consisted of reviewing the offense report and laboratory report and discussing the State's allegations with Mr. Moreno. During the numerous times I met with Mr. Moreno to discuss his case, Mr. Moreno never gave me the name of any fact witness or alibi witness. Mr. Moreno never denied the allegations against him or even hinted to me that they were not true. Mr. Moreno's main concern was avoiding a life sentence or any sentence at the higher end of the spectrum.

Id. at 97-98.

The state court issued detailed findings of fact and conclusions of law. Id. at 84-94. The state court, after considering counsel's affidavit, determined that Petitioner had been provided adequate assistance of counsel. Id. at 92-93. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.

Moreover, in the context of a guilty plea, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). "[O]nce a guilty plea has been entered, all non-jurisdictional defects in the proceedings against a defendant are waived. This includes all claims of ineffective assistance of counsel, except insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983), cert. denied sub. nom, Smith v. McKaskle, 466 U.S. 906, 104 S. Ct. 1685 (1984).

A federal court will uphold a guilty plea challenged in a habeas corpus proceeding if the plea was knowing, voluntary, and intelligent. See James v. Cain, 56 F.3d 662, 666 (5th Cir. 1995); and Hobbs v. Blackburn, 752 F.2d 1079, 1081 (5th Cir. 1985), cert. denied, 474 U.S. 838 (1985). For a guilty plea to be "intelligently" and "knowingly" entered, the defendant must understand both the true nature of the charge against him, and "the consequences" of a guilty plea, respectively. United States v. Briggs, 939 F.2d 222, 227 (5th Cir. 1991) and United States v. Pearson, 910 F.2d 221, 223 (5th Cir. 1990), cert. denied, 498 U.S. 1093 (1991). A plea is intelligent if the defendant understood the nature and substance of the charges against him and not necessarily whether he understood their

8

technical legal effect. James v. Cain, 56 F.3d at 666 (citing Taylor v. Whitley, 933 F.2d 325, 329 (5th Cir. 1991), cert. denied, 503 U.S. 988 (1992)).

The state habeas court issued findings of fact and conclusions of law with respect to the voluntariness of Petitioner's guilty plea. The state habeas court found:

> 13. Pursuant to [counsel's] request, the trial court ordered that applicant be examined for mental competency and sanity.
>
> 14. On November 27, 2007, Dr. Maureen Burrows, a court-appointed psychiatrist, examined applicant for competency and sanity. Dr. Burrows prepared a report documenting her examination of applicant and her findings and conclusions related to that examination. [Counsel] read the report.
>
> 15. Dr. Burrow's report stated that applicant was dependant on cocaine and suffered from major depression. The report also stated that applicant was mentally competent to stand trial. The report stated that applicant was sane at the time of the offense. The report stated that applicant was taking psychiatric medication and should continue to do so to maintain mental competency. Finally, the report stated that, during the examination, applicant did not complain about or display any sign or symptom of psychosis.
>
> . . .
>
> 29. Prior to the guilty plea, [counsel] spoke with applicant extensively. [Counsel] went over with applicant the contents of the two-sided plea form titled "Admonitions to the Defendant" on the front and "Waivers, Consent, Judicial Confession & Plea Agreement" on the back. [Counsel] explained to applicant the contents of that form and applicant appeared to [Counsel] to understand the contents of the form.
>
> 30. Applicant was lucid and coherent during his discussion with [counsel] related to the plea. Applicant displayed no sign of intoxication or impairment of mental functioning.
>
> 31. To the extent applicant was suffering from depression at the time of his plea of guilty, his condition did not affect his ability to communicate with [counsel] or understand what he was doing. Nor did it affect his ability to understand the court proceedings related to the guilty plea.
>
> 32. At the time he entered his guilty plea, applicant understood that by pleading guilty he was waiving the motion to suppress his confession, his right to put on

evidence, his right to confront the State witnesses against him, his right to present any and all defenses to the allegations in the indictment, and his right to challenge the legal sufficiency of the evidence on the issue of his guilt for the offenses alleged in the indictment.

. . .

37. The trial court asked applicant whether he was pleading guilty to the offenses alleged in counts one and two because the allegations were true and for no other reason. Applicant responded in the affirmative. (RR-3).

38. The trial court asked applicant whether he had ever been treated for mental illness. (RR-3). Applicant responded that he had been treated, and was currently being treated, for depression. (RR-4).

39. The trial court asked applicant whether he had been placed on medication for his depression and whether he was regularly getting his medication. (RR-4). Applicant responded "yes" to both questions. (RR-4).

40. The trial court asked [counsel] whether he believed applicant understood the nature and consequences of his pleas. (RR-4). [Counsel] responded that he did so believe. (RR-4). [Counsel] added that his belief was based on the mental examination conducted by Dr. Burrows and his conversations with applicant over the course of representing him.

41. The trial court asked [counsel] whether applicant was presently competent to stand trial. (RR-4). [Counsel] responded, "Yes." (RR-4).

Ex parte Moreno, Appl. No. 71,478-01 at 86-89.

The trial court questioned Petitioner and confirmed he was confessing to the crimes alleged in the indictment and that understood he was waiving his right to appeal. Id. at 89. The trial court further confirmed that Petitioner wanted to waive all the complaints related to his arrest, search, and confessions. Id. at 90. The trial court found that Petitioner was mentally competent, his guilty plea was free and voluntary, he understood the trial court's admonitions, and he was aware of the consequences of his guilty plea. Id. at 91-92. The trial court further found that Petitioner fully understood the nature and consequences of his pleas of guilty and Petitioner's thought processes at

the time of his guilty plea were not impaired by depression, a cocaine addiction, prescription medication, or any type of psychosis. Id.

Petitioner has not presented this Court with any credible evidence establishing that his plea was not voluntarily, knowingly or intelligently entered. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner

shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S. Ct. 1029 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 25th day of January, 2010.

_____
ROBERT PITMAN
UNITED STATES MAGISTRATE JUDGE